By the Court*—Leonard, J.
The judge held at the circuit substantially that the relation of a debtor and creditor existed between the broker and his customer, and also that of pledger and pledgee, when a stockbroker purchases shares for his customer upon a margin furnished by him, and agrees to hold or carry the shares so purchased, in case a margin of ten per cent, is kept good. The judge also held that the broker could not sell the shares so purchased without notice of the time and *288 place of such sale, upon a failure of the customer or purchaser to comply with his contract, in keeping his margin good.
The evidence as to some portions of the contract between the plaintiff and the defendants was contradictory; but there was no dispute that the plaintiff was to keep a margin of ten per cent, on the par value above the market rate of the shares in the hands of the defendants ; that he failed to do so; that the defendants duly notified him of the fall in the market price of the shares, and that they required him to furnish more money to make his margin good, and that the plaintiff having neglected to do so, the defendants sold out the shares at the Stock Exchange without further notice to plaintiff.
There was a clear breach of his contract on the part of the plaintiff, and unless the obligation imposed by law upon a pledgee to notify a pledgor of the time and place of the sale of the thing pledged devolves upon the defendants under such circumstances, upon such a contract, they had the right to sell the shares in the manner they did, and the plaintiff has no cause of action.
The effect of the contract is, that the ■ broker, upon the performance of certain conditions by the customer, will buy and sell a certain number of shares; and in case any advance accrues, and is secured by a sale made under the direction or authority of the customer, he shall enjoy the benefit of it; and in ease a loss ensues, the broker having performed the contract on his part, the customer shall bear it.
It does not appear that, in the present case, the shares were to be carried for any certain or named period of time. The plaintiff, no doubt, could have terminated the transaction at any time, even in case no agreement as to time existed, by directing a sale of the shares, or by paying the cash, with interest and commissions.
The defendants could not do so where there was no stipulation as to time, except, perhaps, on sufficient notice to the customer while his margin was good, or upon failure to keep the agreed margin fully supplied.
The broker lends no money to his customer, and gets no security from him except as to the contingent liability which may arise from a fall in the market price of the shares. The *289 shares purchased are the primary source for the payment of the money advanced by the broker, in case the customer does not desire to pay for them and take them into his own possession, or neglects to perform the agreement with his broker. The “margin” is the security against loss on the part of the agent. The margin, instead of being paid in money, may be secured by a pledge of property, and such security would then be subject to the rules of law governing pledges.
Suppose the broker purchased one hundred shares on the order of his customer for cash, but, upon being called upon after the purchase of the shares, the customer should neglect or be unable to pay for them. There could be no pretence of the existence of a pledge, or that the broker must give notice of the time or place of the sale of the shares so" purchased. The broker might realize his money by an immediate sale for the account of the principal, on the most summary notice of his intention to do so, or even without any notice. This course is justified by the breach of the implied promise of the purchaser to pay cash as soon as the purchase should be made. The principal would be liable for the loss, if any arose; or, if any profit accrued, he would be entitled to receive it; the broker having trusted him in making the transaction, without the cash in hand. It can make no difference in the relation or liability of the parties, if the broker should hold the shares, and forbear for a time to close the transaction by a sale. The broker does not become a pledgee, and his customer a pledgor, of the shares, in consequence of the postponement. Nor am I able to perceive that the relation or liability of the parties would be varied, in this respect, if the postponement should take place under an agreement between the broker and his customer for that purpose, as in the present case. In either case, the right to sell arises from a breach in the customer’s contract; in the one case for failing to supply the margin agreed on, and in the other from the non-payment of the price. The nature of the transaction also requires, in many instances, the right to make a prompt sale to prevent loss.
Under a contract like the one proven, the customer does *290 not become the owner of the shares upon their purchase by the broker. He may become the owner; if he pays for them; but under the contract his interest exists only in the margin, which, by the enhanced value of the shares, may be largely increased, of, by a decline, may be wholly extinguished, and a further, loss ensue.
The transaction bears more resemblance to a conditional sale of property, which will belong to the purchaser on the fulfillment of his contract; but, upon his breach, he will lose not only his right to obtain the property, but also such sum as he has paid; depending, in this particular, upon the terms of the contract.
I concur entirely with the observation of Judge Ingraham in the case of Hanks v. Drake and others, wherein, upon a similar state of facts, he remarks: “ Under such an agreement, the defendants had a right, upon the plaintiffs failing to deposit a further margin when required so to do, to sell the stock and close the transaction. This right to sell arises from the previous violation of the contract, on the part of the person for whom' the stock was purchased, and who, by neglecting to perform on his part, terminated the obligation of the defendants to hold the stock any longer, and left them at liberty to sell the stock for their own protection. The notice which he requires in the case of a sale of a pledge of stock as security for the payment of a sum of money advanced thereon, is not required in such a case.” This must be the law of our general term until overruled by higher authority.
I do not say that the notice in this case was sufficient or otherwise. That question was wholly disregarded by the judge at the trial. He was asked to charge “ that the plaintiff was at the risk to inform himself of the state of the market.” The judge said : “ He was bound to inform himself of the state of the market; no doubt about that, and it was his duty to keep this margin good; but the moment he failed as pledgor he had a right to notice before he could be sold out, unless there was an express agreement.”
He was afterward asked to call the attention of the jury to the fact of the plaintiff having an office. The judge replied : “ There is no pretence of any notice of the time and place of *291 the sale of the stock.” Counsel then inquired : “ Does your honor hold that to be necessary ?” And the judge replied : “ I have so held.” Thus the verdict was called for by the charge, as if it turned wholly upon the notice required in the case of a pledge.
The jury were, misled by this position, and no fact in dispute was before them for consideration, although a lengthy charge had been delivered. They might as well have been instructed to find for the plaintiff, for there was no evidence of any notice of the time or place of the sale, and the case was made to turn upon the omission.
There is also another branch of this case deserving of atten tion.
The appeal is from an order refusing a new trial upon the merits, as well as upon the law arising upon exceptions.
The defendants testified to an express agreement that the stock purchased by the defendants might be sold "if the margin was not kept good, without any notice of the time or place of sale, or any notice of any kind.
The judge argued to the jury in strong terms that such an agreement was wholly improbable, while to those who are acquainted with the transactions customary among stock brokers in the city of New York, it is pretty well understood that any argument drawn from the improbability of the existence of such an agreement would be wholly unfounded.
The defendants sustained, in my opinion, an injury before the jury by the unauthorized expression of the personal views of the judge.
On both grounds there should be a new trial, with costs to abide the event.
Clerke, J., concurred.
Welles, J., dissented.

 Present—Leonard, Clerke and Welles, JJ.